UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
DOMINGO RODRIGUEZ,

                Petitioner,

    -against-

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------------------------X

**ORDER**
11-CV-5470 (SJF)

FEUERSTEIN, J.

    Domingo Rodriguez ("Rodriguez" or "Petitioner") moved to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. [Docket Entry No. 1 (the "Petition")]. For the reasons that follow, the Petition is denied.

I.    BACKGROUND[1]

    A.    Factual Background

    In January 2005, Azucena Gonzalez–Mendez ("Mendez"), a Mexican citizen, was illegally smuggled across the border from Mexico into Arizona. *See United States v. Rodriguez*, 587 F.3d 573, 575 (2d Cir. 2009). Mendez had unsuccessfully attempted to enter the United States on two separate occasions earlier that week. *Id.* After being driven to Las Vegas, she flew from Las Vegas to MacArthur Airport on Long Island (the "Airport"), where she expected to meet her husband, Julio Gabriel Lopez–Perez ("Perez"), who was coming from his home in Asbury Park, New Jersey to pick her up. *Id.* Mendez did not speak English and arrived at the Airport in dirty clothes, muddy shoes, and with no luggage. *Id.* While waiting for her husband, Mendez was approached by Petitioner who told her, in Spanish, that she should go inside

---

[1]     The facts are taken from the Petition, the government's memorandum in opposition to the Petition [Docket Entry No. 7 (the "Opposition")], and my review of the record.

because it was cold. *Id.* Once they were inside the Airport, Petitioner told Mendez that it was unsafe for her to wait outside because the police parked in front of the terminal were from immigration. *Id.* Petitioner told Mendez that if the police noticed her, she would be arrested. *Id.*

Mendez explained to Petitioner that she was waiting for her husband to pick her up. *Id.* Petitioner reiterated his warning about immigration officers and asked Mendez for the phone number of the person she was meeting so that he could call the person for her. *Id.* Mendez gave Petitioner her husband's phone number. *Id.* Petitioner claimed that there was no answer and offered to give Mendez a ride, reiterating again that if she waited in the Airport for too long, she would be arrested. *Id.*

Petitioner escorted Mendez outside to a van being driven as a gypsy cab by Petitioner's co-defendant, Jorge Garcia-Reynoso ("Reynoso"), and told her to get into the van and wait while he went back into the Airport terminal. *Id.* at 576. After sitting in the van for about fifteen (15) minutes, Mendez saw Perez outside the Airport terminal and told Reynoso that she saw her husband and that she wanted to get out of the van to meet him. *Id.* Reynoso told her not to get out of the van "because immigration [was] following [them]." *Id.* Frightened by Reynoso's warning, Mendez remained in the van but asked Reynoso to call Petitioner so he could alert Perez to Mendez's whereabouts. *Id.* Reynoso agreed, purportedly dialed Petitioner's number, and told Mendez there was no answer. *Id.* While this was happening, Mendez could see her husband outside the Airport terminal but she remained in the van because she was afraid that she would get caught by immigration officials. *Id.* Reynoso told Mendez that he would take her home, she agreed, and Reynoso and Mendez left the airport without Petitioner. *Id.*

During this time, Petitioner attempted to contact Perez and eventually spoke to him. *Id.* Petitioner told Perez that he was a Customs Service employee, that he had seen Mendez and

2

directed her to a car because she could not wait around the Airport, and that the driver was a Mexican man who was taking Mendez to New Brunswick, New Jersey. *Id.* After several communications, Petitioner and Perez arranged to meet on the Long Island Expressway. *Id.* Petitioner met Perez on the shoulder of the Long Island Expressway, shook hands with Perez, said "I want to take care of this," told Perez that he would try to get in contact with the person who was driving Mendez and that Perez should "come to an arrangement" with the person driving Mendez to pay for her trip, and told Perez to call him after 7:00 p.m. to get the number for the man who was driving Mendez. *Id.* at 576-77.

After driving around for a while, Reynoso drove to the parking lot of a convenience store where Petitioner got back into the van. *Id.* at 576. Mendez did not try to leave the van because she was afraid, had no money, did not speak English and did not know where she was. *Id.* Perez repeatedly called Petitioner and when he finally got through to him, Petitioner spoke briefly to Perez and then gave the phone to Mendez, who testified that she was "terrified" and started to cry when she heard her husband's voice. *Id.* at 577. Petitioner took the phone back and made plans with Perez to meet at the Monmouth Service Area on the Garden State Parkway in New Jersey (the "Service Area"). *Id.*

After arriving at the meeting point at the Service Area – an empty employee parking lot about one hundred (100) yards from the gas station – Perez approached the van. *Id.* Upon seeing her husband, Mendez tried to get out of the van but Petitioner ordered her not to get out until Reynoso had spoken with Perez. *Id.* Mendez was frightened and complied. *Id.* Perez attempted to open the rear door of the van but Petitioner locked the door. *Id.* Perez demanded that Mendez be let out but Petitioner refused and told Perez that he "had to come to an arrangement with the driver." *Id.* Reynoso then exited the van and told Perez to pay him four

3

hundred and seventy-five dollars ($475.00). *Id.* Perez refused to pay and Petitioner, from inside the van, told Perez that if he did not pay, Petitioner would call the police. *Id.* Perez refused to pay and said would call the police himself. *Id.* Perez returned to his car where his driver called 911 and explained the situation. *Id.* Ten minutes after the call was placed, three New Jersey State Police officers arrived, opened the rear door of the van, let Mendez out, and arrested Petitioner and Reynoso. *Id.* No more than fifteen minutes passed from the time Petitioner told Perez that Mendez would be released only if he paid four hundred and seventy-five dollars ($475.00) until the police secured her release. *Id.*

B. Procedural Background

An indictment charged Petitioner with: conspiracy to commit hostage taking under 18 U.S.C. § 1203 (Count One) and the substantive offense of hostage taking (Count Two), kidnapping under 18 U.S.C. § 1201 (Count Three), conspiracy to transport an illegal alien for commercial advantage under 8 U.SC. § 1324(a)(1)(A)(v)(I) (Count Four) and the substantive offense of transporting an illegal alien under 8 U.S.C. § 1324(a)(1)(A)(ii) (Count Five). Opp. at 1; *see also Rodriguez*, 587 F.3d at 577-78. After a jury trial, Petitioner was acquitted of conspiracy to commit hostage taking (Count One) and the substantive offense of kidnapping (Count Three), and was convicted of the substantive offense of hostage taking (Count Two) and of the transportation of an illegal alien offenses (Counts Four and Five). Opp. at 1; *Rodriguez*, 587 F.3d at 577-78.

Petitioner was sentenced to two hundred and forty (240) months' imprisonment on Count Two (hostage taking) and concurrent sentences of one hundred and twenty (120) months' imprisonment on Counts Four and Five (conspiracy to transport and transporting an illegal alien for financial gain), in addition to five years of supervised release and a three hundred dollar

4

($300) special assessment. Opp., at 1-2; Pet., at 6; *Rodriguez*, 587 F.3d at 578. On appeal, the Second Circuit Court of Appeals reversed Petitioner's hostage taking conviction (Count Two) and affirmed the alien transportation convictions (Counts Four and Five). Pet. at 6; *Rodriguez*, 587 F.3d at 584. On remand, Petitioner was sentenced to eighty-six (86) months' imprisonment and three years of supervised release. Opp. at 2; Pet. at 6; *United States v. Rodriguez*, 423 Fed. Appx. 28 (2d Cir. 2011). Petitioner appealed to the Second Circuit, limiting his appeal to the substantive reasonableness of the sentence, and the Second Circuit affirmed the sentence. Opp. at 2; *Rodriguez*, 423 Fed. Appx. at 28.

On November 7, 2011, Petitioner filed the instant Petition, alleging that his conviction for alien transportation was "obtained without sufficient evidence to convict" because "his guilt was not proven beyond a reasonable doubt" and "[t]here is a lack of scienter to prove that petitioner was actively engaged in transporting aliens only" but rather "petitioner's actions only violated State and local Taxi and Limousine Laws." Pet., at 28. On February 21, 2012, the government opposed the Petition. *See* Opp. To date, Petitioner has not filed a reply.

II. DISCUSSION

    A. Petitioner's Claim is Procedurally Barred

On his first appeal, Rodriguez raised nine (9) issues but did not challenge the sufficiency of the evidence for the counts of transporting an alien (*see Rodriguez*, 587 F.3d at 578, 582 (noting that "Rodriguez makes no challenge to the validity of [the alien transportation convictions], the evidence for which was more than sufficient")), and on his second appeal, Rodriguez only challenged the substantive reasonableness of the sentence. *Rodriguez*, 423 Fed. Appx. at 28. Absent a showing of good cause and prejudice, or actual innocence, a defendant is barred from raising claims in his § 2255 motion that he did not raise on direct appeal. *See*

*Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir.1998). The good cause prong requires the movant to show that something "*external* to the petitioner, something that cannot fairly be attributed to him," resulted in his failure to raise a claim on direct appeal. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (emphasis in original).

Petitioner argues there was insufficient evidence to support his conviction on the charges of alien transportation but does not show good cause and prejudice or actual innocence, and is therefore procedurally barred from raising this claim as he could have raised it on direct appeal. *See Muhammed v. United States*, 635 F. Supp. 1451, 1452 (S.D.N.Y. 1986) (petitioner barred from bringing insufficiency-of-evidence claim on § 2255 motion because petitioner failed to raise argument on direct appeal); *Matista v. United States*, 885 F. Supp. 634, 643 (S.D.N.Y. 1995) (holding that the procedural-bar rule applied to petitioner's § 2255 motion challenging the sufficiency of the evidence against him where petitioner "fail[ed] to raise the sufficiency-of-evidence argument on appeal" and his "memorandum of law in support of his § 2255 motion entirely fail[ed] to mention either cause or prejudice").

B. Petitioner's Claim Fails on the Merits

Even assuming that Petitioner's claim is not procedurally barred, it fails on the merits. "A federal habeas petitioner 'bears a very heavy burden' when challenging the legal sufficiency of a...criminal conviction." *Copeland v. Walker*, 258 F.Supp.2d 105, 118 (E.D.N.Y. 2003) (citing *Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 840 (2d Cir. 1997)); *see also United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004). In reviewing such a claim, the court's "inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt" but rather "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) (internal citations omitted). A petitioner must show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (internal citations omitted). A guilty verdict should be affirmed if "*any* rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." *United States v. Salmonese*, 352 F.3d 608, 618 (2d Cir. 2003) (internal citations omitted) (emphasis in original). Guilty knowledge is frequently incapable of direct proof and can be established only by circumstantial evidence. *United States v. Wu*, 119 F. App'x 364, 365 (2d Cir. 2005); *see also United States v. Gaskin*, 364 F.3d 438, 460-61 (2d Cir. 2004).

Petitioner alleges there was insufficient evidence to convict him of conspiracy to transport an illegal alien and the substantive offense of transporting an illegal alien. Pet. at 18. Specifically, Petitioner alleges that "the proof at trial, viewed in the light most favorable to the government does not prove the scienter requirement of § 1324 that petitioner set out to transport an illegal alien" because the "the mere fact that the passenger held no legal status in the United States was not shown as a factor in regards to petitioner's conduct, nor was any proof adduced that definitely showed petitioner knew the passenger's nationality or status." *Id.* at 21-22.

To establish a violation of 8 U.S.C. § 1324(a)(1)(A)(ii), the Government must prove that (1) an alien entered or remained in the United States in violation of the law, (2) [the defendant] transported the alien within the United States with intent to further the alien's unlawful presence, and (3) [the defendant] knew or recklessly disregarded the fact that the alien was in the country in violation of the law. *United States v. Battle*, 368 F. App'x 560, 562 (5th Cir. 2010) (internal

7

citations omitted). "Section 1324(a) prohibits the knowing transportation of an illegal alien, as well as the same act done with reckless disregard of the fact that the person is an illegal alien." *United States v. Mussaleen*, 35 F.3d 692, 698 (2d Cir. 1994). "Circumstantial evidence alone can establish a defendant's knowledge or reckless disregard that the people harbored are illegally in the country." *United States v. De Jesus-Batres*, 410 F.3d 154, 161 (5th Cir. 2005).

Petitioner was arrested while actually transporting an illegal alien. *See Rodriguez*, 587 F.3d at 577. His knowledge of Mendez's illegal status was evidenced by substantial circumstantial evidence. The government presented testimony from Mendez that when she arrived at the Airport, she did not know how to speak English (Tr. 181), she had no bags or money with her, that she was wearing dirty clothes, the same clothes she was wearing four (4) days earlier when she left Mexico, and dirty sneakers (*id.* at 168-69), and that although it was cold and snowing that day, she was dressed only in thin jeans and a sweatshirt. *Id.* Mendez also testified that Petitioner told her that she could not "be outside for a long time" because there was a police officer "from immigration" and that if he saw her outside for a long time, she could be arrested and "taken to immigration." *Id.* at 170. Mendez testified that Petitioner also told her: "I'll take you, because you cannot be here for a long time because the police officer who is outside is from immigration, and you can be arrested." *Id.* at 172.

The evidence presented at trial, viewed in the light most favorable to the prosecution, was sufficient for a reasonable finder of fact to find beyond a reasonable doubt that Petitioner knew (or recklessly disregarded the fact) that Mendez was in the United States illegally and that Petitioner, in offering her transportation to evade detection by the immigration authorities,

8

willfully acted in furtherance of Mendez's illegal presence in the United States. *See United States v. Hernandez-Sanchez*, 315 F. App'x 308, 309-10 (2d Cir. 2008).

    C.    Request for Evidentiary Hearing

Petitioner requests an evidentiary hearing "upon the issues raised in [his] motion" (Pet. at 2) but does not specify what factual issues he seeks to have resolved at the hearing. 28 U.S.C. § 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b); *see also Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). "The statute does not, however, require the court to hold a full evidentiary hearing in every case. A court has discretion to decide a petition based on the written record, including affidavits, when a full testimonial hearing 'would add little or nothing to the written submissions.'" *Santos v. United States*, No. 13-civ-3098, 2014 WL 1653260, at *6 (E.D.N.Y. Apr. 24, 2014) (citing *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)). In light of the foregoing discussion on the merits of Petitioner's claim and because "the motion and the files and records of the case conclusively show that the [Petitioner] is entitled to no relief" (28 U.S.C. § 2255(b)), no evidentiary hearing is warranted. *See Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) ("insofar as all of the claims raised by [petitioner]...were properly found to be either clearly meritless or procedurally barred" no error by district court "in failing to grant a hearing on [petitioner's] § 2255 motion").

III.    CONCLUSION

For the foregoing reasons, Petitioner's Petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied in its entirety, as is his request for an evidentiary hearing.

As Petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253. The Clerk of the Court shall enter judgment accordingly, close this case, and serve notice of entry of this Order upon all parties in accordance with Federal Rule of Civil Procedure 77(d)(1), including mailing a copy of this Order to Petitioner at his last known address.

**SO ORDERED.**

                                              s/ Sandra J. Feuerstein
                                              Sandra J. Feuerstein
                                              United States District Judge

Dated: March 31, 2015
        Central Islip, New York